**FILED**

AUG 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT

## FOR THE

## JUDICIAL DISTRICT OF COLUMBIA

ROBERT E. McCLANAHAN,

      Petitioner,

vs

ALBERTO GONZALES, ESQ.
ATTORNEY GENERAL FOR THE
"UNITED STATES,"

and

HARLEY G. LAPPIN, DIR.,
FEDERAL BUREAU OF PRISONS,

      Respondent(s)

_____/

N

Case: 1:07-cv-01520
Assigned To : Roberts, Richard W.
Assign. Date : 8/20/2007
Description: Habeas Corpus/2255

**BEFORE THIS HONORABLE COURT:**

**NOW COMES,** Robert E. McClanahan, in want of counsel, pro-se, accused in the above captioned cause, and as Petitioner for the instant motion to request "Judicial Notice" in the nature of Rule 201(d) of the Federal Rules of Evidence, shows this court as follows:

### 1.

That the undersigned requests the court to take "judicial Notice" of a certain excerpt from the United States Government's publication, which is specifically "The Report of the Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the [several sovereign] states."

///// - 1 Judicial Notice - Rule 201(d)

2

2.

That the Undersigned requests the court to take 'Judicial Notice' of the statutes of the State of Louisiana, without limitation, at Chapter 1 §1, et. seq.

3.

That the undersigned requests the court to take 'Judicial Notice,' without limitation, to Article I, Section 8, Clause 17, in amendment to the Constitution of the United States.

4.

That the undersigned requests the court to take 'Judicial Notice,' of the Government's 'charging instruments' whereon, the Government fails to describe a 'locus in quo,' wherein the alleged violative conduct of the undersigned was committed; which is within the legislative, territorial or admiralty jurisdiction of the Federal United States, corporation. (28 U.S.C. §3002 (15)(A)).

5.

That the undersigned requests the court to take 'Judicial Notice' of the self-evident fact that the Government's charging instrument(s) fail to allege or charge the undersigned with an alleged violation of ' The Federal Commerce Clause,' which is in the 'sine qua non' to the legitimate application of the federal statutory provisions under which the undersigned was charged, without nexus to the former, there can be no operation of the latter.

6.

That the undersigned submits the following for judicial review by the court, citing from the Government's report entitled: " **JURISDICTION OVER FEDERAL AREAS WITHIN THE STATES,**"subtitled: " Report of the Interdepartmental Committee for the study of Jurisdiction over Federal Areas within the States."

///// - 2 Judicial Notice Rule 201(d) - N

The Constitution of the United States at Article I, Section 8, Clause 17:

"The Congress shall have power...To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten miles square) as may, by Cession of Particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, Dock-Yards and other needful Buildings;-- And To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Office thereof...

The significance of the foregoing in the above styled action is the purported plaintiff herein cannot demonstrate that the Court has jurisdiction to adjudicate the matter.  In support of the said argument the undersigned refers the Court to a publication entitled **JURISDICTION OVER FEDERAL AREAS WITHIN THE STATES,** and subtitled Report of the Interdepartmental Committee for the Study or Jurisdiction over Federal Areas within the States, which was published in two volumes by the United States printing office.  Excerpts from the said publication are as follows:

"The White House,
Washington, April 27, 1956

Dear Mr. Attorney General:

I am herewith returning to you, so that it may be published and receive the widest possible distribution among those interested in Federal real property matters, Part I of the Report of the Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States. I am impressed by the well-planned effort which went into the study underlying this report and by the soundness of the recommendations which the report makes.

It would seem particularly desirable that the report be brought to the attention of the Federal administrators of real properties, who should be guided by it in matters related to legislative jurisdiction, and to the President of the Senate, the Speaker of the House of Representatives, and appropriate State officials, for their consideration of necessary legislation. I hope that you will see to this. I hope, also, that the General Services Administration will establish as soon as may be possible a central source of information concerning the legislative jurisdictional status of Federal properties and that that agency, with the Bureau of the Budget and the Department of Justice, will maintain a continuing and concerted interest in the progress made by all Federal agencies in adjusting the status of their properties in conformity with the recommendations made in the report.

The members of the Committee and the other officials, Federal and State, who participated in the study, have my appreciation and congratulations on this report. I hope they will continue their good efforts so that the text of the law on the subject of legislative jurisdiction which is planned as a supplement will issue as soon as possible.

Sincerely,
Dwight D. Eisenhower.

The Honorable Herbert Brownell, Jr.,
The Attorney General, Washington, D. C."

and

## LETTER OF ACKNOWLEDGMENT

The White House
Washington, July 8, 1957.

Dear Mr. Attorney General:

I have taken note of the final report (Part II) which you transmitted to me, rendered by the Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States. It is my understanding that the report is to be published and distributed, for the purpose of making available to Federal administrators of real property, Federal and State legislators, the legal profession, and others, this text of the law of legislative jurisdiction in these areas.

In view of the fact that the work of the Committee is completed, and since other departments and agencies of the Government now have clear direction for turning this work into permanent gains in improved Federal-State relations, the Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States is hereby dissolved.

Chairman Perry W. Morton and the members of this Committee have my congratulations and sincere appreciation of their service to our country in bringing to light the facts and law in this much neglected field. This monumental work, culminating three years of exhaustive effort, lays an excellent foundation for allocating to the States some of the functions which under our Federal-State system should properly be performed by State Governments.

Sincerely,
Dwight Eisenhower

The Honorable Herbert Brownell, Jr.,
The Attorney General,
Washington, D. C.

## LETTER OF TRANSMITTAL

Office of the Attorney General,
Washington, DC, June 28, 1957.

Dear Mr. President:

The Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States now has submitted the second, and final, part of its report, a text of the law of legislative jurisdiction over such areas.

This exhaustive and analytical exposition of the law in this hitherto little explored field is a valuable supplement to the first part of the report, the compilation of facts, with recommendations, which received your commendation in April 1956, and constitutes a major addition to legal bibliography.

Together, the two parts of this Committees report and the full implementation of its recommendations will provide a basis for reversing in many areas the swing of "the pendulum of power" * * * from our states to the central government, to which you referred in your address to the Conference of State Governors on June 25, 1957.

The excellence of the work of the Committee reflects great credit upon its Chairman and members. Also especially noteworthy is the splendid assistance which the Committee received from the attorneys general of the several States, the general counsels of Federal agencies, and other State and Federal officials.

With the submission of this second part of its report the Committee has completed its work and recommends that it be dissolved. Since the Departments and other permanent agencies of the Federal Government now can carry out directions which you have issued based upon the work of the Committee, I join in this recommendation.

Respectfully,
Herbert Brownell, Jr.

## LETTER OF SUBMISSION

*INTERDEPARTMENTAL COMMITTEE FOR THE STUDY OF OVER FEDERAL AREAS WITHIN THE STATES JURISDICTION*
June 17, 1957.

Dear Mr. Attorney General:

With the encouragement of the President, the understanding aid of you and the heads of the other Federal agencies represented on the Committee, and the invaluable assistance of the Attorneys General of the several States and of the principal law officers of nearly all Federal agencies, the Committee now has completed, and herewith submits, the final portion of its report, subtitled "Part II, A Text of the Law of Legislative Jurisdiction."

This "Part II" supplements the portion of the Committee's report which you transmitted to the President on April 27, 1956. With its submission the work assigned to the Committee has been completed, and it is recommended that the Committee be dissolved.

Respectfully submitted,
PERRY W. MORTON,
Assistant Attorney General (Chairman).

ROBERT DECHERT,
General Counsel, Department of Defense (Vice Chairman).

HENRY H. PIKE,
Associate General Counsel, General Services Administration (Secretary).

ARTHUR B. FOCKE,
Legal Advisor, Bureau of the Budget.

ELMER F. BENNETT.
Solicitor, Department of the Interior.

ROBERT L. FARRINGTON,
General Counsel, Department of Agriculture.

PARKE M. BANTA,
General Counsel, Department of Health, Education, and Welfare.

GUY H. BIRDSALL,
General Counsel, Veterans. Administration.

# PREFACE

The Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States was formed on December 15, 1954, on the recommendation of the Attorney General approved by the President and the Cabinet The basic purpose for which the Committee was founded was to find means for resolving the problems arising out of jurisdictional status of Federal lands. Addressing itself to this purpose, the Committee; with assistance from all Federal agencies interested in the problems (a total of 33 agencies), from State Attorneys General, and from numerous other sources, prepared a report entitled Jurisdiction over Federal Areas Within the States Part I, The Facts and Committee Recommendations. This report, approved by the President on April 27, 1956, set out the findings of the Committee and recommended changes in Federal and State law, and in Federal agencies' practices, designed to eliminate existing problems arising out of legislative jurisdiction. It included two appendices.

The Committees research involved a general survey of the jurisdictional status of all federally owned real property in the 48 States, and a detailed survey of the status of individual such properties in the States of Virginia, Kansas, and California. These three named States were selected as containing Federal real properties representative of such properties in all the States. Information was procured concerning the practices and problems related to legislative jurisdiction of the 23 Federal Agencies controlling real property, and of the advantages and disadvantages of the several legislative jurisdictional statues for the various purposes for which federally owned land is used This information is reflected and analyzed in the several chapters of Part I of the report, and is summarized in Appendix A of the same part.

The Committees study included a review of the policies, practices, and problems of the 48 States related to legislative jurisdiction. Information concerning these matters similarly is reflected and analyzed in various portions of Part I of the report, with Chapter V of the part being entirely devoted to the laws and problems of States related to legislative jurisdiction. Also, the texts of State (and Federal) constitutional provisions and statutes related to jurisdiction in effect as of December 31, 1955, are gathered in appendix B of Part I.

The major conclusions of the Committee, set out in Part I of - the report, which, of course, are applicable only to the 48 States to which the Committees study extended, and do not apply to present Territories or the District of Columbia, are to the effect that in the usual case the Federal Government should not receive or retain any of the States' Legislative Jurisdiction within federally owned areas, that in some special cases (where general law enforcement by Federal authorities is indicated) the Federal Government should receive or retain legislative jurisdiction only concurrently with the States, and that in any case the Federal Government should not receive or retain any of the States' legislative jurisdiction with respect to taxation, marriage, divorce, descent and distribution of property, and a variety of other matters, specified in the report, which are ordinarily the subject of State control.

The conclusions reached by the Committee were, of course, made only after an appraisal of the facts adduced during the study in the light of applicable law, including the great body of decisions handed down by courts and opinions rendered by governmental legal officers, Federal and State, interpretative of situations affected by legislative jurisdiction.

Recommendations made by the Committee, based on the conclusions indicated above and on certain subsidiary findings, now constitute the policy of the Executive branch of the

Federal Government, and are being implemented by Federal agencies to the extent possible under existing law. However, full implementation of these recommendations must await the enactment of certain suggested Federal and State legislation.

In the course of its study the Committee ascertained the existence of serious lack of legal bibliography on the subject-matter of its interest. With the concurrence of the Attorney General of the United States and the encouragement of the President, it has proceeded with the publication of this Part II of its report, a compilation of the court decisions and legal opinions it weighed in the course of its study of the subject of Legislative jurisdiction.

## LAW OF LEGISLATIVE JURISDICTION

Legal Problems many. -- In view of the vastness of Federal real estate holdings, the large variety of activities conducted upon them, and the presence on many areas of resident employees and other persons, it is to be expected that many legal problems will arise on or with respect to these holdings. In addition to the problems normally encountered in administering and enforcing Federal laws, complicated by occasional conflict with over lapping State laws, the ownership and operation by the Federal Government of areas within the States gives rise to a host of legal problems largely peculiar to such areas. They arise not only because of the fact of Federal ownership and operation of these properties, but also because in numerous instances the Federal Government has with respect to such properties a special jurisdiction which excludes, in varying degrees, the Jurisdiction of the State over them, and which in other instances is, to varying extents, concurrent with that of the State.

## FEDERAL POSSESSION OF EXCLUSIVE JURISDICTION

By constitutional consent. -- This special jurisdiction which is often possessed by the United States stems, basically, out of Article I, Section 8, Clause 17, of the Constitution of the United States, which provides, in legal effect, that the Federal Government shall have exclusive legislative jurisdiction over such area, not exceeding 10 miles square, as may become the seat of government of the United States, and like authority over all places acquired by the Government, with the consent of the State involved, For various Federal purposes. It is the latter part of the clause, the part which has been emphasized, with which this study is particularly concerned. There is a general public awareness of the fact that the United States Government exercises all governmental authority over the District of Columbia, by virtue of power conferred upon it by a clause of the Constitution. There is not the same awareness that under another provision of this same clause the United States has acquired over several thousand areas within the States some or all of those powers, judicial and executive as well as legislative, which under our Federal-State system of government ordinarily are reserved to the States.

By Federal reservation or State cession. For many years after the adoption of the Constitution, Federal acquisition of State-type legislative jurisdiction occurred only by direct operation of Clause 17. The clause was activated through the enactment of State statutes consenting to the acquisition by the Federal Government either of any land, or of specific tracts of land, within the State. In more recent years the Federal Government has in several instances made reservations of jurisdiction over certain areas in connection with the admission of State into the Union. A third means for transfer of legislative jurisdiction now

has come into considerable use, whereby in a general or special statute a State makes a cession of jurisdiction to the Federal Government. Courts and other legal authorities have distinguished at various times between Federal legislative jurisdiction derived, on the one hand, directly from operation of Clause 17, and, on the other, from a Federal reservation or a State cession of jurisdiction. In the main; however, the characteristics of a legislative Jurisdiction status are the same no matter by which of the three means the Federal Government acquired such status. Differences in these characteristics will be specially pointed out in various succeeding portions of this work.

Governmental Power merged in Federal Government. -- Whether by operation of Clause 17, by reservation of jurisdiction by the United States, or by cession of jurisdiction by States, in many areas all governmental authority (with recent exceptions which will be noted) has been merged in the Federal Government, with none left in any State. By this means some thousands of areas have become Federal islands, sometimes called "enclaves,.., in many respects foreign to the States in which they are situated. In general, not State but Federal law is applicable in an area under the exclusive legislative jurisdiction of the United States, for enforcement not by State but Federal authorities, and in many instances not in State but in Federal courts. Normal authority of a State over areas within its boundaries, and normal relationships between a State and its inhabitants, are disturbed, disrupted, or eliminated, as to enclaves and their residents.

The State no longer has the authority to enforce its criminal laws in areas under the exclusive jurisdiction of the United States. Privately owned property in such areas is beyond the taxing authority of the State. It has been generally held that residents of such areas are not residents of the State, and hence not only are not subject to the obligations of residents of the State but also are not entitled to any of the benefits and privileges conferred by the State upon its residents. Thus, residents of Federal enclaves usually cannot vote, serve on juries, or run for office. They do not, as a matter of right, have access to State schools, hospitals, mental institutions, or similar establishments. The acquisition of exclusive jurisdiction by the Federal Government renders unavailable to the residents of the affected areas the benefits of the laws and judicial and administrative processes of the State relating to adoption, the probate of wills and administration of estates, divorce, and many other matters. Police, fire-fighting, notarial, coroner, and similar services performed by or under the authority of a State may not be rendered with legal sanction, in the usual case, in a Federal enclave.

## EXERCISE OF EXCLUSIVE FEDERAL JURISDICTION

Legislative authority little exercised. -- States do not have authority to legislate for areas under the exclusive legislative Jurisdiction of the United States, but the Congress has not legislated for these areas either,, except in some minor particulars.

Exercise as to crimes. -- With respect to crimes occurring within Federal enclaves the Federal Congress has enacted the Assimilative Crimes Act, which adopts for enclaves, as Federal law, the State law which is in effect at the time the crime is committed. The Federal Government also has specifically defined and provided for the punishment of a number of crimes which may occur in Federal enclaves, and in such cases the specific provision, of course, supersedes the Assimilative Crimes Act.

Exercise as to civil matters. -- Federal legislation has been enacted authorizing the

extension to Federal enclaves of the workmen's compensation and unemployment compensation laws of the States within the boundaries of which the enclaves are located. The Federal Government also has provided that State law shall apply in suits arising out of the death or injury of any person by the neglect or wrongful act of another in an enclave. It has granted to the States the right to impose taxes on motor fuels sold on Government reservations, and sales, use, and income taxes on transactions or uses occurring or services performed on such reservations; it has allowed taxation of leasehold interests in Federal property including property located on Federal enclaves; and it has retroceded to the States jurisdiction pertaining to the administration of estates of residents of Veterans Administration facilities. This is the extent of Federal legislation enacted to meet the special problems existing on areas under the exclusive legislative jurisdiction of the United States.

## RULE OF INTERNATIONAL LAW

Extended by courts to provide civil law. -- The vacuum which would exist because of the absence of State law or Federal legislation with respect to civil matters in areas under Federal exclusive legislative jurisdiction has been partially filled by the courts, through extension to these areas of a *Rule of International Law* that when one sovereign takes over territory of another the laws of the original sovereign in effect at the time of the taking which are not inconsistent with the laws or policies of the second continue in effect, as laws of the succeeding sovereign, until changed by that sovereign.

## ACQUISITION OF LEGISLATIVE JURISDICTION
## THREE METHODS FOR FEDERAL ACQUISITION OF JURISDICTION

Constitutional Consent. -- The Constitution gives express recognition to but one means of Federal acquisition of legislative jurisdiction -- by State consent under Article I, Section 8, Clause 17. The debates in the Constitutional Convention and State ratifying conventions leave little doubt that both the opponents and proponents of Federal exercise of exclusive legislative jurisdiction over the seat of government were of the view that a constitutional provision such as Clause 17 was essential if the Federal Government was to have such jurisdiction. At no time was it suggested that such a provision was unessential to secure exclusive Legislative jurisdiction to the Federal Government over the seat of government. While, as has been indicated in the preceding chapter, little attention was given in the course of the debates to Federal exercise of exclusive legislative jurisdiction over areas other than the seat of government, it is reasonable to assume that it was the general view that a special constitutional provision was essential to enable the United States to acquire exclusive legislative jurisdiction over any area. Hence, the proponents of exclusive legislative jurisdiction over the seat of government and over federally owned areas within the States defended the inclusion in the Constitution of a provision such as Article I, Section 8, clause 17. And in United States v. Railroad Bridge Co., 27 Fed. Cas. 686, 693, No. 16,114 (C. C. N. D. Ill., 1855), Justice McLean suggested that the Constitution provided the sole mode for transfer of jurisdiction, and that if this mode is not pursued no transfer of jurisdiction can take place.

State cession. -- However, in Fort Leavenworth *R. R. v. Lowe*, 114 U. S. 525 (1885), the United States Supreme Court sustained the validity of an act of Kansas ceding to the

United States legislative jurisdiction over the Fort Leavenworth military reservation, but reserving to itself the right to serve criminal and civil process in the reservation and the right to tax railroad, bridge, and other corporations, and their franchises and property on the reservation. In the course of its opinion sustaining the cession of legislative jurisdiction, the Supreme Court said (p. 540):

> We are here met with the objection that the Legislature of a State has no power to cede away her jurisdiction and legislative power over any portion of her territory, except as such cession follows under the Constitution from her consent to a purchase by the United States for some one of the purposes mentioned. If this were so, it could not aid the railroad company; the jurisdiction of the State would then remain as it previously existed. But aside from this consideration, it is undoubtedly true that the State, whether represented by her Legislature, or through a convention specially called for that purpose, is in competent to cede her political jurisdiction and legislative authority over any part of her territory to a foreign country, without the concurrence of the general government. The jurisdiction of the United States extends over all the territory within the States, and, therefore, their authority must be obtained, as well as that of the State within which the territory is situated, before any cession of sovereignty or political jurisdiction can be made to a foreign country. * * * In their relation to the general government, the States of the Union stand in a very different position from that which they hold to foreign governments. Though the jurisdiction and authority of the general government are essentially different from those of the State, they are not those of a different country; and the two, the State and general government, may deal with each other in any way they may deem best to carry out the purposes of the Constitution. It is for the protection and interests of the States, their people and property, as well as for the protection and interests of the people generally of the United States, that forts, arsenals, and other buildings for public uses are constructed within the States. As instrumentalities for the execution of the powers of the general government, they are, as already said, exempt from such control of the States as would defect or impair their use for those purposes; and if, to their more effective use, a cession of legislative authority and political jurisdiction by the State would be desirable, we do not perceive any objection to its grant by the Legislature of the State. Such cession is really as much for the benefit of the State as it is for the benefit of the United States.

Had the doctrine thus announced in Fort Leavenworth *R. R. v. Lowe*, supra, been known at the time of the Constitutional Convention, it is not improbable that Article I, Section 8, Clause 17, at least insofar as it applies to areas other than the seat of government, would not have been adopted. Cession as a method for transfer of jurisdiction by a State to the United States is now well established, and quite possibly has been the method of transfer in the majority of instances in which the Federal :......

Federal Reservation. — In Fort Leavenworth *R. R. v. Lowe*, supra, the Supreme Court approved a second method not specified in the Constitution of securing legislative jurisdiction in the United States. Although the matter was not in issue in the case, the Supreme Court said (p. 526):

The land constituting the Reservation was part of the territory acquired in 1803 by cession from France, and, until the formation of the State of Kansas, and her admission into the Union, the United States possessed the rights of a proprietor, and had political dominion and sovereignty over it. For many years before that admission it had been reserved from sale by the proper authorities of the United States for military purposes, and occupied by them as a military post. The jurisdiction of the United States over it during this time was necessarily paramount. But in 1861 Kansas was admitted into the Union upon an equal footing with the original States, that is, with the same rights of political dominion and sovereignty, subject like them only to the Constitution of the United States. Congress might undoubtedly, upon such admission, have stipulated for retention of the political authority, dominion and legislative power of the United States over the Reservation, so long as it should be used for military purposes by the government; that is, it could have excepted the place from the jurisdiction of Kansas, as one needed for the uses of the general government. But from some cause, inadvertence perhaps, or over-confidence that a recession of such jurisdiction could be had whenever desired, no such stipulation or exception was made.

Almost the same language was used by the Supreme Court of Kansas in *Clay v. State*, 4 Kan. 49 (1866), and another suggestion - of judicial recognition of this doctrine is to be found in an earlier case in the Supreme Court of the United States, *Langford v. Montieth*, 102 U. S. 145 ( 1880), in which it was held that when an act of Congress admitting a State into the Union provides, in accordance with a treaty, that the lands of an Indian tribe shall not be a part of such State or Territory, the new State government has no jurisdiction over them. "The enabling acts governing the admission of several of the States provided that exclusive jurisdiction over certain areas was to be reserved to the United States" in view of these developments, an earlier opinion of the United States Attorney General indicating that a State legislature, as distinguished from a State constitutional convention, had to give the consent to transfer jurisdiction specified in the Federal Constitution (12 Ops. A. G. 428 (1868)), would seem inapplicable to a Federal reservation of jurisdiction.

Since Congress has the power to create States out of Territories and to prescribe the boundaries of the new States, the retention of exclusive legislative jurisdiction over a federally owned area within the State at the time the State is admitted into the Union would not appear to pose any serious constitutional difficulties.

No Federal Legislative Jurisdiction without consent cession, or reservation. -- It scarcely needs to be said that unless there has been a transfer of jurisdiction (1) pursuant to Clause 17 by a Federal acquisition of land with State consent, or (2) by cession from the State to the Federal Government, or unless the Federal Government has reserved jurisdiction upon the admission of the State, the Federal Government possesses no legislative jurisdiction over any area within a State, such jurisdiction being for exercise entirely by the State, subject to non-interference by the State with Federal functions, and subject to the free exercise by the Federal Government of rights with respect to the use, protection, and disposition of its property.

## NECESSITY OF STATE ASSENT TO TRANSFER OF JURISDICTION TO FEDERAL GOVERNMENT

Constitutional Consent --The Federal Government cannot, by unilateral action on its part, acquire legislative jurisdiction over any areas within the exterior boundaries of a State Article I, Section 8, Clause 17, of the Constitution, provides that legislative jurisdiction may be transferred pursuant to its terms only with the consent of the legislature of the State in which is located the area subject to the jurisdictional transfer. As was indicated in Chapter II, the consent requirement of Article I, Section 8, Clause 17, was intended by the framers of the Constitution to preserve the States Jurisdictional integrity against Federal encroachment.

State cession or Federal reservation. -- The transfer of legislative Jurisdiction pursuant to either of the two means not spelled out in the Constitution likewise requires the assent of the State in which is located the area subject to the jurisdictional transfer. Where legislative jurisdiction is transferred pursuant to a State cession statute, the State has quite clearly assented to the transfer of legislative jurisdiction to the Federal Government, since the enactment of a State cession statute is a voluntary act on the part of the legislature of the State.

The second method not spelled out in the Constitution of vesting legislative jurisdiction in the Federal Government, namely, the reservation of legislative jurisdiction by the Federal Government at the time statehood is granted to a Territory, does not involve a transfer of legislative jurisdiction to the Federal Government by a State, since the latter never had jurisdiction over the area with respect to which legislative jurisdiction is reserved. While, under the second method of vesting legislative jurisdiction in the Federal *Government*, the latter may reserve such jurisdiction without inquiring as to the wishes or desires of the people of the Territory to which statehood has been granted, nevertheless, the people of the Territory involved have approved, in at least a technical sense, such reservation. Thus, the reservation of legislative jurisdiction constitutes, in the normal case, one of the terms and conditions for granting statehood, and only if all of the terms and conditions are approved by a majority of the voters of the Territory, or by a majority of the Territorial legislature, is statehood granted.

## NECESSITY OF FEDERAL ASSENT

Express Consent Required by R. S. 355.-- Acquiescence, or acceptance, by the Federal Government, as well as by the State, is essential to the transfer of legislative jurisdiction to the Federal Government. When legislative jurisdiction is reserved by the Federal Government at the time statehood is granted, to a Territory, it is, of course, obvious that the possession of legislative jurisdiction meets with the approval of the Federal Government. When legislative jurisdiction is to be transferred by a State to the Federal Government either pursuant to Article I, Section 8, Clause 17, of the Constitution, or by means of a State cession statute, the necessity of Federal assent to such transfer of legislative jurisdiction has been firmly established by the enactment of the February 1, 1940, amendment to R. S. 355. While this amendment in terms specifies requirement for formal Federal acceptance prior to the transfer of exclusive or partial legislative jurisdiction, it also applies to the transfer of concurrent jurisdiction. The United States Supreme Court, in *Adams v. United States*, 319 U. S. 312 (1943), in the course of its opinion said (pp. 314-315):

Both the Judge Advocate General of the Army and the Solicitor of the Department of Agriculture have construed the 1940 Act as requiring that notice of acceptance be filed if the government is to obtain *concurrent* jurisdiction. The Department of Justice has abandoned the view of jurisdiction which prompted the institution of this proceeding, and now advises us of its view that concurrent jurisdiction can be acquired only by the formal acceptance prescribed in the Act. These agencies cooperated in developing the Act, and their view's are entitled to great weight in its interpretation. * * * Besides, we can think of no other rational meaning for the phrase "jurisdiction, exclusive or partial," than that which the administrative construction gives it. Since the govern merit had not accepted jurisdiction in the manner required by the Act, the federal court had no jurisdiction of this proceeding. In this view it is immaterial that Louisiana statutes authorized the government to take jurisdiction, since at the critical time the jurisdiction had not been taken.

Former Presumption of Federal acquiescence in absence of dissent. -- Even before the enactment of the 1940 amendment to R. S. 355, it was clear that a State could not transfer, either pursuant to Article I, Section 8, Clause 17, of the Constitution, or by means of a cession statute, legislative jurisdiction to the Federal Government without the latter's consent Prior to the 1940 amendment to R. S. 355, However, it was not essential that the consent of the Federal *Government* be expressed formally or in accordance with, any prescribed procedure. Instead, it was presumed that the Federal Government accepted the benefits of a State enactment providing for the transfer of legislative jurisdiction. As discussed more fully below, this presumption of acceptance was to the effect that once a State legislatively indicated a willingness to transfer exclusive jurisdiction such jurisdiction passed automatically to the Federal 'Government without any action having to be taken by the United States. However, the presumption would not operate where Federal action was taken demonstrating dissent from the acceptance of proffered jurisdiction.

Presumption in transfers by cession. -- In Fort Leavenworth *R. R. R. v. Lowe*, supra, in which a transfer of legislative jurisdiction by means of a State cession statute was approved for the first time, the court said (p. 528) that although the Federal Government had not in that case requested a cession of *jurisdiction*, nevertheless, "as it conferred a benefit, the acceptance of the act is to be presumed in the *absence* of any dissent on their part." See also *United States v. Johnston*, 58 F. Supp. 208, aff'd., 146 F. 2d 268 (C. A. 9, 1944), cert. den., 324 U. S. 876; 38 Ops. A. G. 341 (1935). A similar view has been expressed by a number of courts to transfers of jurisdiction by cession. In some instances, however, the courts have indicated the existence of affirmative grounds supporting Federal acceptance of such transfers. In *Yellowstone Park Transp. Co. v. Gallatin County*, 31 F. 2d 644 (C. A. 9, 1929), cert. den., 280 U. S. 555, it was stated that acceptance by the United States of a cession of jurisdiction by a State over a national park area within the State may be implied from acts of Congress providing for exclusive jurisdiction in national parks. See also *Columbia River Packers, Ass'n v. United States*, 29 F. 2d 91 (C. A. 9, 1928), *United States v. Unzeuta*, 281 U. S. 138 (1930).

Presumption in transfers by constitutional consent.-- Until recent years, it was not clear *but* that the consent granted by a State pursuant to Article I, Section 8, Clause 17, of the Constitution, would under all circumstances serve to transfer legislative jurisdiction to the

Federal Government where the latter had "purchased" the area and was using it for one of the purposes enumerated in Clause 17. In *United States v. Cornell*, 25 Fed. Cas. 646, No 14,867 (C. C. D. R. I., 1819), Justice Story expressed the view that Clause 17 is self-executing, and acceptance by the United States of the "benefits" of a State consent statute was not mentioned as an essential ingredient in the transfer of legislative jurisdiction under Clause 17. In the course of his opinion in that case, Justice Story said (P. 648):

> The constitution of the United States declares that congress shall have power to exercise "exclusive legislation" in all "cases whatsoever" over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards and other needful buildings. When therefore a purchase of land for any of these purposes is made by the national government, and the state legislature has given its consent to the purchase, the land so purchased by the very terms of the constitution ipso facto falls within exclusive legislation of congress, and the state jurisdiction is completely ousted. [Italics added.]

As late as 1930, it was stated in *Surplus Trading Co. v. Cook*, 281 U. S. 647, that (p. 652):

> It long has been settled that where lands for such a purpose [one of those mentioned in Clause 17] are purchased by the United States with the consent of the state legislature "the jurisdiction theretofore residing in the State passes," in virtue of the constitution provision, "to the United States," thereby making the jurisdiction of the latter the sole jurisdiction. [Italics added.]

The italicized portions of the quoted excerpts suggest that Article I, Section 8, Clause 17, of the Constitution, may be selfexecuting where the conditions specified in that clause for the transfer of jurisdiction have been satisfied.

In *Mason Co. v. Tax Comm'n*, 302 U. S. 186 (1937), however, the Supreme Court clearly extended the acceptance doctrine, first applied to transfers of legislative jurisdiction by State cession statutes in Fort Leavenworth *R. R. v. Lowe*, supra, to transfers pursuant to Article I, Section 8, Clause 17, of the Constitution. The court said (p. 207):

> Even if it were assumed that the state statute should be construed to apply to the federal acquisitions here involved, we should still be met by the contention of the Government that it was not compelled to accept, and has not accepted, a transfer of exclusive jurisdiction. As such a transfer rests upon a grant by the State, through consent or cession, it follows, in accordance with familiar principles applicable to grants, that the grant may be accepted or declined. Acceptance may be presumed in the absence of evidence of a contrary intent, but we know of no constitutional principle which compels acceptance by the United States of an exclusive jurisdiction contrary to its own conception of its interests. * * *

What constitutes dissent. — Only in a few instances have the courts indicated what may constitute a "dissent" (*See Fort Leavenworth R. R. v. Lowe*, supra) by the Federal Government from a State's proffer of legislative jurisdiction. In *Mason Co. v. Tax Comm'n*,

supra, the court concluded that a validation by Congress of contracts entered into by Federal administrative officials granting to State, officials certain authority with respect to schools, police protection, etc., reflected a Congressional intent not to accept the legislative jurisdiction offered to the Federal Government by the State by the latter's enactment of a consent statute. In a State case (*International Business Machines Corporation v. Ott*, 230 La. 666, 89 So. 2d 193 (1956)), use by the Federal installation of similar State services, with no indication of Congressional knowledge in the latter, was held to have negative Federal acceptance of jurisdiction proffered under a general consent and cession statute of the State. It may be noted that extension of this decision would put in doubt the status of many, if not most, Federal areas now considered to be under the legislative jurisdiction of the United States. In *Atkinson v. State Tax Commission*, 303 U. S. 20 (1933), the court indicated that the enforcement of the Oregon workmen's compensation law in the Federal area was incompatible with exclusive Federal legislative jurisdiction, and, since the Federal Government did not seek to prevent the enforcement of this law, the presumption of Federal acceptance of legislative jurisdiction was effectively rebutted.

## CRIMINAL JURISDICTION

*Right of Defining and Punishing For Crimes:* Exclusive Federal Jurisdiction. — Areas over which the Federal Government has acquired exclusive legislative jurisdiction are subject to the exclusive criminal jurisdiction of the United States. *Bowen v. Johnston*, 306 U. S. 19 (1939); *United States v. Watkins*, 22 F. 2d 437 (N. D. Cal, 1927). That the States can neither define nor punish for crimes in such areas is made clear in the case of In re Ladd, 74 Fed. 31 (C. C. N. D. Neb., 1896), (p. 40):

> * * * The cession of jurisdiction over a given territory takes the latter from within, and places it without, the jurisdiction of the ceding sovereignty. After a state has parted with its political jurisdiction over a given tract of land, it cannot be said that acts done thereon are against the peace and dignity of the state, or are violations of its laws; and the state certainly cannot claim jurisdiction criminally by reason of acts done at places beyond, or not within, its territorial jurisdiction, unless by treaty or statute it may have retained jurisdiction over its own citizens, and even then the jurisdiction is only over the person as a citizen. * * *

The criminal jurisdiction of the Federalize Government extends to private lands over which legislative jurisdiction has been vested in the Government, as well as to federally owned lands. *United States v. Unzeuta*, supra; see also *Petersen v. United States*, 191 F. 2d 154 (C. A. 9, 1951), cert. denied 342 U. S. 885. Indeed, the Federal Government's power derived from exclusive legislative jurisdiction over an area may extend beyond the boundaries of the area, as may be necessary to make exercise of the Government's jurisdiction effective; thus, the Federal Government may punish a person not in the exclusive jurisdiction area for concealment of his knowledge concerning the commission of a felony within the area. *Cohens v. Virginia*, 6 Wheat. 264, 426-429 (1821).    In    *Hollister    v. United States*, 145 Fed. 773 (C. A. 8, 1906), the court said (p. 777):

Instances of relinquishment and acceptance of criminal jurisdiction by state

Legislatures *and* the national Congress, respectively, over forts, arsenals, public buildings, and other property of the United States situated within the states, are common, and their legality has never, so far as we know, been questioned.

On the other hand, while the Federal Government has power under various provisions of the Constitution to define, and prohibit as criminal, certain acts or omissions occurring anywhere in the United States, it has no power to punish for various other crimes, jurisdiction over which is retained by the States under our Federal-State system of government, unless such crimes occur on areas as to which legislative *jurisdiction* has been vested in the Federal Government. The absence of jurisdiction in a State, or in the Federal Government, over a criminal act occurring in an area as to which only the other of these governments has legislative jurisdiction is demonstrated by the case of *United States v. Tully*, 140 Fed. 899 (C. C. D. Mont., 1905). Tully had been convicted by a State court in Montana of first degree murder, and sentenced to be hanged. The Supreme Court of the State reversed the conviction on the ground that the homicide had occurred on a military reservation over which exclusive jurisdiction was vested in the Federal Government. The defendant was promptly indicted in the Federal court, but went free as the result of a finding that the Federal Government did not, have legislative jurisdiction over the particular land on which the homicide had occurred. The Federal court said (id. p. 905):

> It is unfortunate that a murderer should go unwhipped of justice, but it would be yet more unfortunate if any court should assume to try one charged with a crime without jurisdiction over the offense. In this case, in the light of the verdict of the jury in the state court, we may assure that justice would be done the defendant were he tried and convicted by any court and executed pursuant to its judgment. But in this court it would be the justice of the vigilance committee wholly without the pale of the law. The fact that the defendant is to be discharged may furnish a text for the thoughtless or uninformed to say that a murderer has been turned loose upon a technicality; but this is not a technicality. It goes to the very right to sit in judgment. * * · These sentiments no doubt appealed with equal force to the Supreme Court of Montana, and it is to its credit that it refused to lend its aid to the execution of one for the commission of an act which, in its judgment, was not cognizable under the laws of its state; but I cannot bring myself to the conclusion reached by that able court, and it is upon the judgment and conscience of this court that the matter of jurisdiction here must be decided.

The United States and each State are in many respects separate sovereigns, and ordinarily one cannot enforce the laws of the other.

State and local police have no authority to enter an exclusive Federal area to make investigations, or arrests, for crimes committed within such areas since Federal, not State, offenses are involved. Only Federal law enforcement officials, such as representatives of the Federal Bureau of Investigation and United States marshals and their deputies, would be authorized to investigate such of offenses and make arrests in connection with them. The policing of Federal exclusive jurisdiction areas must be accomplished by Federal personnel, and an offer of a municipality to police a portion of a road on such an area could not be accepted by the Federal official in charge of the area, as police protection by a municipality

to such an area would be inconsistent with Federal exclusive jurisdiction.

Concurrent Federal and State criminal jurisdiction. -- There are, of course, Federal areas as to which a State, in ceding legislative jurisdiction to the United States, has reserved some measure of jurisdiction, including criminal jurisdiction, concurrently to itself. In general, where a *crime* has been committed in an area over which the United States and a State have concurrent criminal jurisdiction, both governments may try the accused without violating the double jeopardy clause of the Fifth Amendment. *Grafton v. United States*. 206 U. S. 333 (1907), held that the same acts constituting a crime cannot, after a defendant's acquittal or conviction in a court of competent jurisdiction of the Federal Government, be made the basis of a second trial of the defendant for that crime in the same or in another court, civil or military, of the same government. However, where the same act is a crime under both State and Federal law, the defendant may be punished under each of them. *Hebert v. Louisiana*, 272 U. S. 377 (1922). (p.382):

It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each. The Fifth Amendment, like all the other guaranties in the first eight amendments, applies only to proceedings by the Federal Government, *Barron v. Baltimore*, 7 Pet. 243, and the double jeopardy therein forbidden is a second prosecution under authority of the Federal Government after a first trial for the same offense under the same authority., ,

It is well settled, of course, that where two tribunals have concurrent jurisdiction that which first takes cognizance of a matter has the right, in general, to retain it to a conclusion, to the exclusion of the other. The rule seems well stated in *Mail v. Maxwell*, 107 Ill. 554 (1883), (p. 561):

Where one court has acquired jurisdiction, no other court, State or Federal, will, in the absence of supervising or appellate jurisdiction, interfere, unless in pursuance of some statute, State or Federal, providing for such interference.

Other courts have held similarly. There appears to be some doubt concerning the status of a court-martial as a court, within the meaning of the Judicial Code, however.

Law *enforcement* on areas of exclusive or concurrent jurisdiction. — The General Services Administration is authorized by statute to appoint its uniformed guards as special policemen, with the same powers as sheriffs and constables to enforce Federal laws enacted for the protection of persons and property, and to prevent breaches of the peace, to suppress affrays or unlawful assemblies, and to enforce rules made by the General Services Administration for properties under its jurisdiction; but the policing powers of such special policemen are restricted to Federal property over which the United States has acquired exclusive or concurrent jurisdiction. Upon the application of the head of any Federal department or agency having property of the United States under its administration or control and over which the United States has exclusive or concurrent jurisdiction, the General Services Administration is authorized by statute to detail any such special policeman for the protection of such property and, if it is deemed desirable, to extend to such property the applicability of regulations governing property promulgated by the General Services

Administration  The General Services Administration is authorized by the same statute to utilize the facilities of existing Federal law enforcement agencies, and, with the consent of any State or local agency, the facilities and services of such State or local law enforcement agencies.

Although the Department of the Interior required protection for an installation housing important secret work, the General Services Administration was without authority to place uniformed guards on the premises in the absence in the United States of exclusive or concurrent jurisdiction over the property, and notwithstanding the impropriety of permitting the policing of the property by local officials, if they were willing, without necessary security clearances.

Civilian Federal employees may be assigned to guard duty on Federal installations, but there is no Federal statute (other than that appertaining to General Services Administration and three statutes of even less effect 16 U.S.C. 559 (Forest Service), and 16 U.S.C. 10 and 10a (National Park Service) conferring any special authority on such guards. They are not peace officers with the usual powers of arrest; and have no greater powers of arrest than private citizens. As citizens, they may protect their own lives and property and the safety of others, and as agents of the Government they have a special right to protect the property of the Government. For both these purposes they may use reasonable force, 'and for the latter purpose they may bear arms irrespective of State law against bearing arms. Such guards, unless appointed as deputy sheriffs (where the State has at least concurrent criminal jurisdiction), or deputy marshals (where the United States has at least concurrent criminal jurisdiction), have no more authority than other private individuals so far as making arrests is concerned.

State and local officers may, by special Federal statute, preserve the peace and make arrests for crimes under the laws of States, upon immigrant stations, and the jurisdiction of such officers and of State and local courts has been extended to such stations for the purposes of the statute.

Partial jurisdiction. — In some instances States in granting to the Federal Government a measure of exclusive legislative jurisdiction over an area have reserved the right to exercise, only by themselves, or concurrently, by themselves as well as by the Federal Government, criminal jurisdiction over the area, In instances of complete State retention of criminal jurisdiction. whether with respect to all matters or with respect to a specified category of matters, the rights of the States, of the United States, and of any defendants, with respect to crimes as to which State jurisdiction is so retained are as indicated in this chapter for areas as to which the Federal Government has no criminal jurisdiction. In instances of concurrent State and Federal criminal jurisdiction with respect to any matters the rights of all parties are, of course, determined with respect to such matters according to the rules of law generally applicable in areas of concurrent jurisdiction. Accordingly, there is no body of law specially applicable to criminal activities in areas under the partial legislative jurisdiction of the United States.

State criminal jurisdiction retained. — State criminal jurisdiction extends into areas owned or occupied by the Federal Government, but as to which the Government has not acquired exclusive legislative jurisdiction with respect to crimes. And as to many areas owned by the Federal Government for its various purposes it has not acquired legislative jurisdiction. The Forest Service of the Department of Agriculture, for example, in accordance with a provision of Federal law (16 U. S. C. 480), has not accepted the jurisdiction proffered

by the statutes of many States, and the vast majority of Federal forest lands are held by the Federal Government in a proprietorial status only.

The Federal Government may not prosecute for ordinary crimes committed in such areas. Federal civilians who may be appointed as guards in the areas do not have police powers, but possess only the powers of arrest normally had by any citizen unless they receive appointments as State or local police officers.

The foregoing present several questions concerning the purported jurisdiction of the Court in the above styled action. Some of which are:

1.    Did the federal government ever obtain jurisdiction over the geographical areas described in the governments charging instruments as being the Locus in Quo whereon the purportedly prohibited acts of the undersigned took place ?

    a.    If so, when?

    b.    If so, to what extent?

2.    Are the governments charging instruments defective on their face where they fail to establish on their face or at any subsequent juncture therein, that the locus in quo was within the legislative, territorial or admiralty jurisdiction of the federal United States?

    a.    Was the Grand Jury informed that the locus in quo, as described by the government, not within the legislative, territorial or admiralty jurisdiction of the United States?

    b.    Did the United States district court commit reversible error where it failed to render a legal determination on the record as to whether or not the Court had jurisdiction to entertain the cause.

3.    Did the federal government establish on the record that it had Subject Matter jurisdiction over the alleged prohibited act(s), where the government failed to charge the undersigned with an alleged violation of the federal "Interstate Commerce" clause?

    a.    Did the federal government inform the Grand Jury that the sine qua non to the legitimate application of the enumerated subsections of the Controlled Substances Act is Commerce?

    b.    Did the United States district court error where it failed to notice the missing element in the charged offense, and failed to render a legal determination as to the obvious defect?

JUDICIAL NOTICE

## FACTS AND FINDINGS OF LAW

FACT AND FINDING:

Fact, a thing done; an action performed or an incident trans-
piring, an event or circumstance; an actual occurance.

(SPECIAL) FINDING:

Is a specific setting forth of the ultimate facts established
by the evidence and which are determinative of the judgment which
must be given.  It is only a determination of the ultimate facts
on which the law must be determined.  A special finding may also
be said to be one limited to the fact issue submitted.

ULTIMATE FACTS:

One that is essential to the right of action or matter of
defense, and the trial court is under the duty of submitting only
ultimate or controlling issues.

1.    Title 42 U.S.C.A. 1986 "Action for neglect to prevent,"
Every person who having knowledge that any of the wrongs conspired
to be done, and mentioned in Section 42 U.S.C. 1985 of this title,
are about to be committed, and having power to prevent or aid in
preventing the commission of the same, neglects or refuses to do
so, if such wrongful act be committed, shall be liable to the party
injured, or persons legal representatives, for all damages caused
by such wrongful act, which such person by reasonable diligence
could have prevented; and such damages may be recovered in an action
on case; and any number or persons guilty of such wrongful neglect
or refusal may be joined as defendants in action. (42 U.S.C.S. 1986
is a derivative of 1985 and provides remedy for persons injured by
neglect or refusal of those having power to do so to prevent wrongs
specified in 1985.)

///// - 22 Judicial Notice Rule 201(d) - N

2.    Title 28 U.S.C.A. Section 453: Each justice or judge of the United States shall take the following oath or affirmation before performing the duties of his office: "I,___do solemnly swear (or affirm) that I will administer justice without respect to persons, and do equal right to the poor and to the rich, and that I will faithfully and impartially discharge and perform all the duties incumbent upon me as___, under the Constitution and laws of the United States so help me God." (Note: It does not say "United States of America").

3.    7th Amendment:  In suits of common law, where the value in controversy shall exceed twenty dollars, the right to trial by jury shall be preserved, and no fact tried except by jury.

4.    Title 18 U.S.C.A. Sect. 1621 "Perjury" Whoever

(1)  having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2)  in any declaration, certificate, verification, or statement under penalty of perjury as permitted under Section 1746 of Title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true; is guilty of perjury and shall, except otherwise expressly by law, be fined under this title or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States.  See: 18 U.S.C. 1622, 18 U.S.C. 1623, and 18 U.S.C. 1001

5.    "perjury of Oath of Office": Perjury; Inforjudgemental law, the willful assertion as to a matter of fact, opinion, belief

///// - 23  Judicial Notice Rule 201(d)

or knowledge, made by a witness in a judicial proceeding as part of his or her evidence, either upon oath or in any form allowed by law to be substituted for an oath or in any form allowed by law whether such evidence is given in open court, or in affidavit, such assertion being material to the issue or point of inquiry and known to such witness to be false. Perjury is a crime committed when a lawful oath is administered, in some judicial proceeding, to a person who swears willfully, and falsely, in matters material to the issue or point in question. (Reference **Gatewood v. State**, 15 MD. App. 314, 290 A.2d 551, 553; F.R.C.P. Rule 9(b), 12(d)(1), (2),(7); Title 42 U.S.C. 1986, 1985, 1983 Note 349, 14th Amendment U.S. Constitution.

6.    **F.R.C.P. Rule 56(e):** Form of Affidavits; Further Testimony; Defence Required; Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissable in evidence, and shall show affirmatively that the Affiant is competent to testify to the matters stated herein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto and served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his re- sponse, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

///// - 24 Judicial Notice - Rule 201(d) - N

7. Stare Decisis: Policy of Courts to stand by precedent and not to disturb settled point. **Neff v. George**, 364 Ill. 306, 4 N.E. 2d 388, 390, 391. Doctrine that, when a court has once laid down a principal of law as applicable to a certain state of facts; regardless of whether parties and property are the same. **Horne v. Moody Tex Civ.**, App., 146 S.W. 2d 505, 509, 510. Under doctrine a deliberate or solemn decision of court made after argument on question of law fairly arising in the case, and necessary to its determination, **is an authority or binding precedent in the same court** or in other courts of equal or lower rank in subsequent cases where the very point is again in controversy. **State v. Mellenberger**, 163 Or.233, 95 P2d. 709, 719, 720. Blacks Law Dictionary 5th Edition pg. 1261. (Further refference: Defendants knowledge of wrongful acts is statutory prerequisite to suit under 42 U.S.C. 1986. **Buck v. Board of Elections**, (1976, CA;2, NY) 536 F2d 522. Prior, unreviewed state administrative adjudication may have no preclusive effect on claims subsequently asserted under 42 U.S.C.S. 1981, 1983, 1985, 1986, 1988. **Elliot v. University of Tennessee**, (1985, CA6 Tenn) 766 F2d 982, 38 BNA FEP Cas 522, 37 CCH EPD 25419, cert gr 474 U.S. 788, 92 L Ed. 2d 635, 106 S. Ct. 3220, 41 BNA FEP Cas 177, 40 CCH EPD 36205.).

8. F.R.C.P. 12(b)(6): Rule 12 is Defenses; Rule 12(b) states with particularity, " How Presented. Every defense in law or fact, to a claim for relief in any pleading, whether a claim, counter claim, cross-claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the opinion of the pleader be made Section 8; 12(b)(6): failure to state a claim upon which relief can be granted. (Refer Note 7.)

9.    F.R.C.P. 12(b)(2): Rule 12 is Defenses; Rule 12(b) states with particularity, " How Presented. Every defense in law or fact, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: 12(b)(2); lack of jurisdiction over the person. (Refer F.R.C.P. 12(b)(7): Failure to join a party under Rule 19.) (F.R. IZP. Rule 19(b).

10.    F.R.C.P. 12(b)(1): Rule 12 is Defenses; Rule 12(b) states with particularity, "How Presented. Every defense in law or fact, to a claim for relief in any pleading, whether a claim, counter claim, cross-claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: 12 (b)(1): lack of jurisdiction over the subject matter. (Refer Note 7.)

11.    F.R.C.P. 12(b)(7): Rule 12 is Defenses; Rule 12(b) states with particularity. "How Presented. Every defense in law or fact, to a claim for relief in any pleading, whether a claim, counter claim, cross-claim, or third party claim shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: 12(b)(7): Failure to join a party under Rule 19. (See Joining F.R.C.P. Rule 19 (3)0.

12.    14th Amendment: No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the U.S., nor shall any state deprive any person of life, liberty, or property without due process of the law; nor to any person the equal protection of the law.

13.    Title 18 U.S.C.A. Section 872: Extortion by officers

///// - 26 Judicial Notice Rule 201(d) - N

or employees of the United States Whoever, being an officer, or employee of the United States or any department or agency thereof, or representing himself to be or assuming to act as such, under color or pretense of office or employment commits or attempts an act of extortion, shall be fined under this title or imprisoned not more than 3 years, or both; but if the ammount so extorted or demanded does not exceed $100, he shall be fined under this title or imprisoned not more than one year. (As amended Oct. 31,1951, c. 655 subsect. 24(3), 65 stat. 720; Sept. 13, 1994, Pub. L 103-322, Title XXXIII, Subsect. 3 30016(I)(G)(K), 108 Stat. 2147).

14.    1st Amendment: Freedom of speech and press, and to petition for a redress of grievances. 5th Amendment: No person shall be deprived of life, liberty, or property without due process of law. 6th Amendment: Right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, and informed of the nature and cause of the accusation. 7th Amendment: In suits of common law, where the value in controversy shall exceed twenty dollars, the right to trial by jury shall be preserved, and no fact tried except by jury.

15.    Title 18 U.S.C.A. Section 242: provides in pertinent part; "Whoever, under color of law, statute, ordinance, regulation, or custom, willfully subjects any inhabitant of any state, territory, or district to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States...shall be fined not more than $1000 dollars or imprisoned not more than one year, or both." Question was not whether state law had been violated but whether inhabitant of state had been deprived of federal right by one who acted under color of any law. **Screws v. United States**, (1945) 325 U.S. 91, 89 L Ed 1495,65 S. Ct 1031, 162 ALR 1330.
///// - 27 Judicial Notice Rule 201(d) - N

16.    Title 42 U.S.C.A. Section 1985: (2) Ref. Obstructing justice: intimidating party, witness, (2) if two or more persons in any state or territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from "attending such court or from testifying to any matter pending" therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit jury or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been seen such juror: or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any matter, the due course of justice in any state or territory, with intent to deny to any citizen the equal protecetion of the law or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the law.

Discrimination: A failure to treat all persons equally where no reasonable distinction can be found between those favored and those not favored. Ref. **Baker v. Cal. Land Title Co.,** D.C. Cal. 349, F. Supp. 23, 238 239.  Title VII of the 1964 Civil Rights Act.

17.    Title 18 U.S.C.A. 241; "If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States or because of his having so exercised the same;" or

"If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured,"

///// - 28 Judicial Notice Rule 201(d) - N

"They shall be fined not more than $10,000 or imprisoned more than ten years, or both."

18.    Title 42 U.S.C.A. Section 1983; Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States, or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

19.    4th Amendment: Unreasonable searches and seizures shall not be violated, and no warrants shall issue, but upon probable cause and supported by "oath or affirmation," and particularly describing the place to be searched and the person or thing to be seized.

20.    Although city is not "person" amenable to action under 42 U.S.C.S. 1986, city officials acting in their official capacities are subject to action under this. **Black Bros. Combined Inc. v. Richmond**, (1974, ED Va) 386 F. SUPP 147, 12 BNA FEP Cas 432, 10 CCH EPD 10267. If city or orther municipal corporation had policy or custom of refusing or neglecting to prevent violations of. 42 U.S.C.S. 1985, and city's agents, servants, and employees followed that policy or custom, then city should be held liable under 42 U.S.C.S. 1986. **Vasquez v. Reno**, (1978, DC Nev) 461 F. SUPP. 1098, 21 BNA FEP Cas 1281, 19CCH EPD 9091. Municipality is directly liable under 42 U.S.C.S. 1985(2), 1985(3)', and 1986 only where it is shown that deprivation of rights was pursuant to policy statement, ordinance, regulation, a decision of an official adopted and promulgated, or or custom, usage **Bell v. Milwaukee**, (1982, ED Wis) 536 F. Supp. 462,

///// 29 - Judicial Notice  Rule 201(d) - N

affd in part and revd in part on other grounds (CA7 Wis) 746 F2d 1205, 16 Fed Rules Evid Serv 279. (Further reference; 41 ALR 3d 700 Personal liability of policeman, sheriff, or similar peace officer or his bond for injury suffered as a result of failure to enforce law or arrest lawbreaker.)

21.    Color of Law: The appearance or semblance without the Substance, of legal right. **State v. Brechler**, 185 Wis. 599, 202 N.W. 144, 148 (refer Blacks Law Dictionary 4th Edition, page 331.)

22.    Ratification: In a broad sense, the confirmation of a previous act done either by the party himself or another; confirm- ation of a voidable act., **Story**, ag. subsection 250, 251; 2 Kent, Comm. 237; **Norton v. Shelby County**, 6 S. Ct. 1121, 118 U.S. 435, 30 L.Ed. 178; **Gallup v. Fox**, 30 A. 756, 64 Conn. 491. In the law of principal and agent, the adoption and confirmation by one person with knowledge of all material fact, of an act or contract performed or entered into in his behalf by another who at the time assumed without authority to act as his agent. **Maryland Casualty Co. v. First State Bank of Delaware**, 101 Okl. 71, 223 P. 701, 705. (Refer Blacks Law Dictionary 4th Edition, page 1428.)

23.    Stipulation: A material article in agreement. (Refer Blacks Law Dictionary 4th Edition, page 1586.)

24.    F.R.C.P. Rule 11: Signing of Pleadings, and Other Papers; Representations to Court; Sanctions; 11(b): By presenting to the court (whether by signing, filing, submitting, or later advocating) a Pleading, written Motion, or other paper, an attorney or unrepresent- ed party is certifying that to the best of the Persons knowledge, information and belief, formed after an inquiry reasonable under the circumstances:  11(b)(2): the claims, defenses and other legal contentions therein are warranted by existing law or by a nonfrivilous

///// - 30 Judicial Notice - Rule 201(d) - N

argument for the extension, modification, or reversal of existing law or the establishment of new law.

25.    Fiduciary: A person having a duty, created by an under-taking, to act primarily for another benefit in matters connected with such undertaking. (Refer Blacks Law Dictionary 5th Edition p. 563.)

Malice in law is not necessarily personal hate or ill will, but is the state of mind which is reckless of the law and of the legal right of the citizen. (Refer **Chrisman v. Terminal R. Ass'n. of St. Louis**, 237 Mo. APP. 181 157 S.W. 2d 230,235.)

26.    Fraud: An intentional perversion of Truth, for the purpose of inducing another in reliance upon it in part with some valuable thing belonging to him or to surrender a legal right: a false rep-resentation of a matter of fact, whether by words or by conduct, by false or misleading allegations or by concealment of that which should have been disclosed, which decieves and is intended to decieve another so that he shall act upon it to his legal injury. **Brainerd Dispatch Newspaper Co. v. Crow Wing County**, 196 Minn. 194, 264 N.W. 779,780. Any kind of artifice employed by one person to decieve another. **Goldstein v. Eqitable Life Assur. Soc. of U.S.**, 160 Misc. 364, 289 N.Y.S. 1064,1067. A generic term, embracing all multi-farious means which human ingenuity can devise, and which are re-sorted to by one individual to get advantage over another by false suggestions or by suppression of truth and includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated. **Johnson v. McDonald**, 170 Okl. 117, 39 P2.d 150. "Bad Faith" and "Fraud" are synonymous and also synonymous of dishonesty, infidelity, faithlessness, perfidy, unfairness, etc. **Joiner v. Joiner**, Tex. Civ. App., 87 S.W. 2d 903, 914, 915. (Refer Blacks Law Dictionary 4th Edition pg. 788, 789.)

Note:

Because everyone is deemed to know the law, inaccurate represent-
ations regarding legal matters are not generally actionable.  Of
course, were one to make a representation regarding a matter of law
that the misrepresenter himself knew to be inaccurate, a "fraud"
action would lie. (Refer **White v. Mulvania**, 575 S.W. 2d 184 (Mo.
1978) (party's "superior" knowledge of the law)[see note 1 fact and
finding sheet] <u>held to be an exception from general rule that a
misrepresentation</u>, synonymous of dishonesty, infidelity, faithless-
ness, perfidy, unfairness, etc.  **Joiner v. Joiner**, Tex. Civ. App.,
87 S.W. 2d 903, 914,915.  (Refer Blacks Law Dictionary 4th Edition
pg. 788, 789.)

Note;

Because everyone is deemed to know the law, inaccurate represent-
ations regarding legal matters are not generally actionable.  Of
course, were one to make a representation regarding a matter of law
that the misrepresenter himself knew to be inaccurate, a "Fraud"
action would lie. (Refer **White v. Mulvania**, 575 S.W. 2d 184 (Mo.
1978) (party's "superior" knowledge of the law (see Note 1 Fact and
Finding Sheet) [<u>held to be an exception from general rule that a
misrepresentation of law is not actionable.</u>]

Whereby, the government's cause against petitioner is premised
upon an unlawful application of Law, viz:

1.    Lack of subject jurisdiction;

2.    Lack of jurisdiction over defendant, a citizen party;

3.    No Fourth Amendment Search Warrant;

4.    Unlawful indictment;

5.    Wrongful application of U.S. Codes;

6. Lack of published regulations in the Federal Register;
7. Failing to give notice under due process and denial of due process;
8. Usurpation of power not delegated or legislated;
9. Unauthorized prosecution under Admiralty/Maritime law;
10. and, the denial of the effective assistance of counsel.

## CONCLUSION

In the Nature of Rule 201(d), of teh Federal Rules of Evidenc, the Court is compelled to take Judicial Notice of the foregoing, where it is shown that the legislative jurisdiction of the Federal Government is strictly limited and defined.  The Federal Government has no Constitutional or Congressional authority to restrict or compel the activities of private citizens, domociled without the legislative, territorial or admiralty jurisdiction of the Federal United States.  The jurisdiction of the Court is limited by and does not exceed that of the Federal Government.  Where the instant matter is concerned, neither the Federal Government or the district court have established, on the record, documented proof that the alleged probibitive conduct of the undersigned was committed with-in the jurisdiction of the Federal United States or that such alleged probibitive conduct violated a provision of the Federal Interstate Commerce Clause.

**WHEREFORE,** THE UNDERSIGNED RESPECTFULLY PRAYS THAT THE COURT WILL TAKE **JUDICIAL NOTICE** OF THE FOREGOING AND FIND AS A MATTER OF LAW AND FACT THAT THE FEDERAL GOVERNMENT LACKED BOTH, LEGISx;7 LATIVE AND USBJECT MATTER JURISDICITON.

Dated: _August 6 74_ , 2007.

Respectfully submitted by:

*Robert C. McClanahan*
Robert C. McClanahan

///// - 33 Judicial Notice - Rule 201(d)

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

Robert McClanahan,          )          Case No. CR-95-422- R
                            )
        Petitioner,         )          RE:  Case No. _____
                            )
vs.                         )
                            )              ADMINISTRATIVE
ALBERTO GONZALES,           )                  AND
ATTORNEY GENERAL FOR THE    )             QUASI-JUDICIAL
"UNITED STATES,"            )                 NOTICE
                            )
and                         )
                            )
HARLEY LAPPIN, DIR., OF     )
FEDERAL BUREAU OF PRISONS,  )
                            )
        Respondent(s).      )
_____)

BEFORE THIS HONORABLE COURT:

COMES NOW, Robert McClanahan, , the petitioner, and submits
this Judicial Notice, to appraise the Court of the following, by
and through said notice:

**1.**

Subsection  2255, of **Title 28 of the United States Code**, is
inapplicable and without the force or effect of law where it is shown
not to have been enacted by Congress, into Federal Law.  The Con-
gressional Record, Vol. 94-Part 7 (June 15, 1948 to June 19, 1948)
pp. 8229-9169, and Vol. 94-Part 8, (July 26, 1948 to December 31,

1948) pp. 9353, reveal that Congress was not assembled in cession on the date(s) that Title 3,8, 18, 21, 28 and 48 are puported to have been enacted into law by Congress.

## 2.

The United States District Court, wherein the cause herein complained of, arose, is shown to be an Executive Tribuanl, without Artilce III judicial authority.  This assertion is supported by consulting Supreme Court Rule 45, The Revised Statutes of 1878, The Judiciary Act of March 3, 1911, Executive Order 6166, Balzac v. Porto Rico, (1922).  Mookine v. United States, (1938).  Thus, not authorized to entertain the cause now before the court.

## 3.

Thus, the Court, in similar matters (Common Law Writ of Habeas Corpus), appears to be resorting to inapplicable statutory provisions to remove the cause to a court which the court knows lacks the authority under Article III to entertain the matter.  Thereby the sustainment of an unlawful conviction and term of imprisonment **via** subterfuge and non-compliance with the law  (a Malum In Se Crime?) whereby the Accused/Petitioner is deprived a remedy in law to redress a grievance.

## 4.

It is the foregoing, and following reasons that the Petitioner has brought his instant cause under the common law, Writ of Habeas Corpus, and invoked the venue and jurisdiction of an Article III, Constitutional Court.

5.

It is there incumbent upon this Court, in the interest of justice, by and through this Judicial Notice, as a neutral party between both Petitioner and Respondents, upon its own motion to issue an **ORDER TO SHOW CAUSE** to the Respondent(s) why a **Writ of Habeas Corpus** should not issue, in their 'showing' based upon the facts and points raised in the §2241 and Notice and Demand To Dismiss For Lack Of Criminal Jurisdiction.

Dated: _August 6th_, 2007.      Respectfully submitted
                                 By;
                                 _Robert Mc Clanahan_
                                 Robert McClanahan/pro-se

////////

TABLE OF CITATIONS

FROM THE MEMORANDUM OF LAW

3.

ADAMS v UNITED STATES, DK. No. 97-2263 (2nd Cir. 1998)

UNITED STATES v MORGAN, 346 U.S. 502, 505 (1954)

4.

28 U.S.C. §88 District of Columbia-Courts, Act of June 7, 1934,
48 Stat 926, and the Act June 25, 1936, 49 Stat. 1921

O'DONOGHUE v UNITED STATES, 289 U.S. 516 (1933), 77 L.Ed 1356,
53 S.Ct.74

MOOKINI v U.S., 303 U.S.201 at 205(1938), 82 L.Ed 748, 58 S.Ct. 543

FEDERAL TRADE COMMISSION v KLESNER, 274 U.S. 145 (1927)

CLAIBORNE-ANNAPOLIS FERRY CO. v UNITED STATES, 285 U.S. 382 (1932)

6.

HARTFORD v DAVIES, 16 S.Ct. 1051 (1896)

UNITED STATES v BEAVANS, 16 U.S. (3 Wheat) 336 (1818)

UNITED STATES v BENSON, 495 F.2d 481 (1946)

UNITED STATES v ROGERS, 23 F.658 (DC Ark. 1885)

FORT LEAVENWORTH RAILROAD v IOWA, 114 U.S. 525 (1885)

ADAMS v UNITED STATES, 319 U.S. 312, 63 S.Ct. 1122, 87 L.Ed. 1421
(1943)

7.

UNITED STATES v JOHNSON, 337 F.2d 180 (affmd) 86 S.Ct. 749, 383 U.S.
169, 15 L.Ed. 681

UNITED STATES v BEAVENS, 16 U.S. Wheat 336 (1818)

3 Wheat At 350,351

3 Wheat At 386,387

3 Wheat At 388

11.

People v Godfrey,   7 Johns 225 N.Y. (1819)

17 Johns, at 233 (emphasis added)

12.

United States v Beavens, supra

United states v Cornell, 2 Manson 60, 1 cir. (1819)

2 Manson, at 63

13.

New Orleans v United States, 35 U.S. (10 pet)662 (1836)

10 Pet. at 737

14.

New York v Miln, 36 U.S.(11Pet.) 102 (1837)

36 U.S. at 133

36 U.S. at 139

15.

Pollar v Hagan, 44 U.S. (3 How.) 212 (1845)

44 U.S. at 221

44 U.S. at 228, 229

16.

Fort Leavenworth R. Co. v Iowa, 114 U.S. 525, (1885) 995

114 U.S. at 531

United States v Fox, 95 U.S. 670, 672 (1877)

Manchester v Massachusetts, 139 U.S. 240, 262 (1890)

United States v Flores, 289 U.S. 137, 151 (1932)

U.S. v Bedford, 27 Fed. Cas. p.91, 103, Case No. 15,867 (1847)

22.

United States v Britton, 108 U.S. 199, 206 (1882)

United States v Eaton, 144 U.S. 677, 687 (1891)

United States v Gradwell, 243 U.S. 476, 485 (1916)

Donnelley v United States, 276 U.S. 505-511 (1927)

Jerome v United States, 318 U.S. 101, 104 (1942)

Norton v United States, 92 Fed. 2d 753 (1937)

United States v Grossman, 1 Fed. 2d 941, 950-51 (1924)

23.

State of Pennsylvania v The Wheeling E. Bridge Co. 13, How. (54 U.S.) 518, 563 (1851)

24.

The United States v Worrall, 2 Dall. (2. U.S.) 384, 391 (1798)

25.

T.M. Cooley, A Treatise on the Constitutional Limitation, 5th Ed., pp. 54, 55

Cohens v Virginia, 6 Wheat. (19 U.S.) 264, 404 (1821)

20 Am Jur 2d §60, 377

Davis v Rogers, 1 Houst (del) 44

28.

Hagan v Lavine, 415 U.S. 528 (1974)

Ex Parte McCardle, 7, Wall 506 19 L.Ed. 264

e.q. Marbury v Madison, 1 Cranch 137, 173-180, 2 L.Ed. 60 (1803)

Mitchell v Maurer, 293 U.S. 237, 244, 79 L.Ed. 338, 55 S.Ct. 162 (1934)

3-Table of Cit. from the Memo. of Law w/ Incorp. Points and Auth-N

Judice v Vail, 430 U.S. 327, 331, 332, 51 L.Ed. 2d 376, 97 S.Ct.
1211 (1977) (standing)

Bender v Williams Port Areas School District, 475 U.S. 534, 89 L. Ed.
2d 501, 106 S.Ct. 1326

United States v Corrick, 298 U.S. 435, 440, 80 L.Ed. 1263, 56 D. Wy.
329 (1936)

e.q., Sumner v Matta, 449 U.S. 539, 547-548 n.2, 66 L.Ed. 722,
101 S.Ct. 764 (1981)

City of Kenosha v Bruno, 412 U.S. 507, 511 37 L.Ed. 2d, 109, 93 S.Ct.
2222 (1973)

Clark v Paul Gray, Inc., 306 U.S. 583, 588, 83 L.Ed. 1001 59 S.Ct.
744 (1939)

St. Paul Mercury Indemnity Co. v Red Cab Co., 303 U.S. 283, 287-288
n.10 82 L.Ed. 845 58 S.Ct. 586 (1939)

Marbury v Madison, 5 U.S. 137, 176-178, 1 Cranch 137 (1803)

Bell v Maryland, 378 U.S. 266, 224 (1964)

Stanard v Olesen, 74 S.Ct. 768 (1954)

McNutt v G.M., 56 S.Ct. 789, 80 L.Ed. 1135

Thomas v Gaskiel, 62 S.Ct. 673, 83 L.Ed. 111

Housenbaum v Bauer, 120 U.S. 450 (1887)

31.

46 American Jurisprudence 2d Judgments §26

American Jurisprudence 2d Courts §115

32.

State of Rhode Island et, al v Commonwealth of Mass., 37 U.S. 657
(1938)

Adams v United States, 87 L.Ed. 1421

American Jurisprudence 2d Courts §60 page

4-Table of Cit. from the Memo. of Law w/Incorp. Points and Auth-N

Old Wayne Mut. Life Asso. v McDonough, 204 U.S. 8, 51 L.Ed. 345, 27 S.Ct. 236

35.

Stirone v United States, 361 U.S. 212,80 S.Ct. 270, 4 L.Ed. 2d. 252 (1960) at 857

36.

Brecht v Abrahamson, 507 U.S. 123 L.Ed. 2d 353, 113 S.Ct. 1710 (1993)

Engle v Isaac, 456 U.S. 107, 128, 71 L.Ed. 2d 783,102 S.Ct. 1031, 162 ALR 1330 (1945)

United States v Unmans, 410 U.S. 396 411-412, 35 L.Ed. 2d 379, 93 S.Ct. 1007 (1973)

United States v Bass, 404 U.S. 336, 349 30 L.Ed. 2d 488, 92 S.Ct. 515 (1971)

37.

United States v Knowles, 29 F.3d 947, 952 (5th Cir. 1994)

38.

Meyer v United States, 175 F.2d 45, 47 (2nd Cir. 1949)

Lewellyn v Nunez, 573 F.2d. 769 (2d Cir. 1978)

C.I.R. v Ridgeway's Estates, 291 F.2d 257 (3rd Cir. 1961)

United States v Cruikshank, 92 U.S. 542, 558 23 L.Ed. 588, 593

United States v Simmons, 96 U.S. 360, 362, 24 L.Ed. 819,820

United States v Carll, 105 U.S. 611, 612, 26 L.Ed. 1135

U.S. v Hess, 124 U.S. 483, 487, 31 L.Ed. 516, 518, 8 S.Ct. 543

Blitz v U.S., 153 U.S. 308, 315, 38 L.Ed. 725, 14 S.Ct. 924

Keck v U.S., 172 U.S. 434, 437 43 LEd. 505, 507, 19 S.Ct. 254

Morissette v U.S., 246, 270 note 30, 96 L.Ed. 288, 304 S.Ct. 240,cf.

U.S. v Petrillio, 332 U.S. 1, 10, 11, 91 L.Ed. 1877, 1884, 1885, 67 S.Ct. 1538

Hamling v United States, 418 U.S. 87, 117, 94 S.Ct. 1887, 2907-08, 41 L.Ed. 2d 590 (1974)

5-Table of Cit. from the Memo. of Law w/Incorp. Point and Autho..

U.S. v Pupo, 841 F.2d 1235 (4th Cir. 1988)

U.S. v Hooker, Supra. At 841 F.2d 1225 (4th Cir. 1988)

Orfield Criminal Procedure from Arrest to Appeal 243

Ex Parte Bain, 121 U.S. 1, 30 L.Ed. 849, 7 S.Ct. 781

United States v Norris, 821 U.S. 619, 74 L.Ed. 1076, 50 S.Ct. 424

Stirone v United States, 361 U.S. 212, 4 L.Ed. 2d 252, 80 S.Ct. 270

Ex Parte Bain, surpra (121 U.S. at 10,13 )

Stirone v United States, supra (361 U.S. at 218)

                              42.

United States v Fox, 95 U.S. 670, 672 (1877)

Manchester v Massachusetts, 139 U.S. 240, 262 (1890)

United States v Flores, 289 U.S. 137, 151 (1932)

U.S. v Bedford, 27 Fed. Cas., p. 91, 103, Case No. 15,867 (1847)

                              44.

United States v Britton, 108 U.S. 199, 206 (1882)

United States v Eaton, 144 U.S. 677, 687 (1897)

United states v Gradwell, 243 U.S. 476, 485 (1916)

Donnelley v United States, 276 U.S. 505, 511 (1927)

Jerome v United States, 318 U.S. 101, 104 (1942)

Norton v United States, 92 Fed. 2d 753 (1937)

United States v Grossman, 1.Fed. 2d 941, 950-51 (1924)

                              45.

State of Pennsylvania v The Wheeling E. Bridge Co., 13 How. (54 U.S.)
518, 563 (1851)

The United States v Wortall, 2 Dall. (2. U.S.) 384, 391 (1798)

                              47.

T.M. Cooley, A Treatise on the Constitutional Limitations,
5th Ed., pp. 54, 55

Cohens v Virginia, 6 Wheat. (19 U.S.) 264, 404 (1821)

49.

Five Flags Pig Line Co. v Dept. of Transportation, 854, F.2d 1435, 1440 (1933)

Stephan v United States, 319 U.S. 415, 426 (1943)

44 Stat Part 1, preface

Murrell v Western Union Tel. Co., 160 F.2d 737, 733 (1947)

United States v Mercur Corp., 83 F.2d 178, 180 (1936)

53.

Roger's Inc. v United States, 265 F.2d 615, 618 (1959)

55.

Slaughter-House Cases, 83 U.S. 36

United States v Dewitt, 76 U.S. 41

Gibbons v Ogden, 22 U.S. 1

Keller v United States, 213 U.S. 138

People v Godfrey, 17 Johns 225, at 233 (N.Y. 1818)

United States v Beavans, 16 (3 Wheat) 336 (1818)

Adams v United States, 319 U.S. 312 (1943)

Caha v United States, 152 U.S. 211, 215 (1894)

58.

Foley Brothers v Filardo, 336 U.S. 281 (1949)

62.

Hotch v United States, 212 F.2d 280 (9th Cir. 1954), at p.283

63.

Wei v Robinson, 246 F.2d 739 (7th Cir. 1957) cert. den. 78 S.Ct. 144, 355 U.S. 879

Wolfson v United States, 492 F.2d 1386, 204 Ct. Cl. 83 (1974)

7-Table of Cit. from the Memo. of Law w/ Incorp. Points and Auth.-N

Shafer v United States ..., cert. den. 79 S.Ct. 74,
351 U.S. 931

Northern States Power Co. v Rural Electrification Administration,
243 F. Supp. 618 (1965)

64.

United States v Mersky, 361 U.S. 431, 438 (1960)

65.

United States v Reinis, 794 F.2d 506 (9th Cir. 1986)

United States v Two Hundred Thousand Dollar, 590 F. Supp. 846
(S.D. Fla. 1934)

66.

United States v Welden, 377 U.S. 95 (1964)

Stephan v United States, 319 U.S. 423 (1943)

Best Foods v United States, 147 F. Supp. 749, 37 Cust. Ct. 1 (1956)

Peart v Motor Vessel Bering Explorer, 373 F. Supp. 927 (1974)

67.

United States v Nevers, 7 F.3d 59 (5th Cir. 1993)

United States v Larionoff, 431 U.S. 864, at 973, 97 S. Ct. 2150,
at 2156, 53 L.Ed. 2d, 48 at 56

Manhattan Gen. Equip. Co. v C.I.R., 297 U.S. at 134

Neel v United States, 266 F. Supp. at 10

Western Union Teleg. Co. v F.C.C., 541 F.2d 346, 354 (3rd Cir. 1976),
cert. den. 429 U.S. 1029 (1977)

Morning v Family Publications Services, Inc., 411 U.S. 356, 369
(1973)

United States v Mersky, supra.

69.

United States v Pupo, 841 F.2d 1235

8-Table of Cit. from the Memo. of Law w/Incorp. Points and Auth.-N

United States v Young, 730 F.2d at 324

United States v McCray, 665 F.2d 664, 673, 679 (5th Cir. 1982)

United States v Stirone, 361 U.S. 212, 4 L.Ed. 2d 252, 80 S. Ct.

United States v Wuco, 535 F.2d 1225 (9th Cir. 1976). Cert. denied
429 U.S. 978, 97 S. Ct. 488, L.Ed. 2d 586 (1976)

Hale v United States, 89 F.2d (4th Cir.)

United States v Berlin, 472 F.2d 1002, 1007 (2d Cir. 1973)

United States v Beard, 414 F.2d 1014, 1017 (3rd Cir.)

United States v Lopez, at 2F.3d 1342

71.

Arizona v Manypenny, 451 U.S. 232, 101 S. Ct. 1657

United States v Fessler, 781 F.2d 384, 386 (1986)

People v Godfrey, 17 Johns 225 at 233

Gray v Blight, 112 F.2d 696

Gregory v Ascroft, 501 U.S. 452, 458, 115 L.Ed. 2d 410, 111 S. Ct.
2395 (1991)

72.

United States v Oregon, 366, U.S. 643, 649, 6 L.Ed. 2d 575, 81
S. Ct. 1278 (1961)

Case v Bowles, 327 U.S. 92, 102 90 L.Ed. 552, 66 S. Ct. 438 (1946)

Oklahoma ex rel Phillips v Guy F. Atkinson Co., 313 U.S. 508, 534,
85 L.Ed. 1487, 61 S. Ct. 1050 (1941)

73.

United States v Darby, 312 U.S. 100, 124, 85 L.Ed. 609, 61 S. Ct.
451, 132 ARL 1430 (1941)

United States v Mechanik, 475 U.S. 66, 70, 106 S. Ct. 938, 941,
89 L.Ed. 2d 50 (1989)

United States v Hooker, 841 F.2d 1225

9-Table of Cit. from the Memo. of Law w/Incorp. Points and Auth.-N

<u>Arizona v Rumsey</u>, 467 U.S. 203, 212, 81 L.Ed. 2d 164, 104 S. Ct. 2305 (1984)

<u>Oregon v Kennedy</u>, 456 U.S. 667, 691, 692 n. 34, 72 L.Ed. 2d 416, 102 S. Ct. 2083 (1982)

<u>United States v Lopez</u>, No. 93-1260

<u>McCullough v Maryland</u>, Wheat 316 (1819)

<u>Gibbons v Ogden</u>, Supra at 195

<u>Marbury v Madison</u>, 1 Cranch 137, 177 (1803)

74.

18 U.S.C. §3551

Parallel Tables of Authorities and Rules 1997 Ed. at pg. 733

43 C.F.R. 9260-public lands, Alaska

36 C.F.R. 242-subsistence management regulations for public lands in Alaska

50 C.F.R. 100, (same as C.F.R. 242)

78.

42 C.J.S. 'Indictments and Information' §1, p.833

22 Corpus Juris Secundum, "Criminal Law", §324, p.390

80.

<u>Hooker v Boles</u>, 346 F.2d 285, 286 (1965)

81.

22 Corpus Juris Secundum, "Criminal Law", §150 p.183

<u>Voorhees v The Bank of the United States</u>, 35 U.S. 449, 474-75 (1836)

84.

Federal Register (44 U.S.C. §1505)